## UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF PENNSYLVANIA

IN RE                :

                    :     **Chapter 7**

**THE SWARTHMORE GROUP, INC.**  :
**f/k/a THE S GROUP, INC.,**    :

                    :

                    :     **Bankruptcy No. 22-12040-AMC**

                    :

     **DEBTOR**        :

_____:

                    :

**TERRY P. DERSHAW, TRUSTEE,**  :

     **PLAINTIFF**      :

                    :

     v.           :     **Adv. Pro. No. 24-00095-AMC**

                    :

**JAMES E. NEVELS, PAULA MANDLE,** :
**GLENN BECKER, DENISE CARUSO, &** :
**MARK ROGOZINSKI,**     :

                    :

     **DEFENDANTS**    :

_____:

Ashely M. Chan, United States Bankruptcy Judge

## OPINION

## I.    INTRODUCTION

This adversary proceeding arises out of events which preceded the collapse of The Swarthmore Group, Inc. (the "Debtor" or "TSG"). Plaintiff, Terry P. Dershaw ("Plaintiff" or "Trustee"), as Chapter 7 trustee for the estate of TSG, brings claims for, *inter alia*, breach of fiduciary duty, aiding and abetting breach of fiduciary duty, avoidance of preferential and fraudulent transfers, conversion, unjust enrichment, and civil conspiracy. Defendant, Paula Mandle ("Mandle," together with "Plaintiff," the "Parties"), moves to dismiss pursuant to Federal

Rule of Civil Procedure 12(b)(6) the 15 counts[1] (the "Counts") in which she is named as a defendant.

For the reasons stated below, Mandle's motion to dismiss ("Motion to Dismiss") will be granted as to Count X for avoidance of preferential transfers pursuant to 11 U.S.C. § 547. The remainder of the Motion to Dismiss will be denied.

## II.    BACKGROUND

As alleged by Plaintiff, TSG was a privately held Delaware corporation with its headquarters in Philadelphia, Pennsylvania. Case No. 22-00095 ECF No. ("ECF") 1 ¶ 30. It operated from 1991 until its closure on June 30, 2022. *Id.* at 1. During its lifespan as a Registered Investment Advisor, TSG offered portfolio management, financial wealth management, investment consulting services, and other related services, serving clients both in the United States and abroad. *Id.* at ¶ 31.

In 2017, TSG experienced a net loss of $262,781.70. *Id.* at ¶ 35. In 2018, it experienced a net loss of $81,725.19. *Id.* at ¶ 36. In 2019, it experienced a net loss of $117,648.21. *Id.* at ¶ 37. In 2020, it experienced a net profit of $531,232.30, due to federal Paycheck Protection Program ("PPP") loans that were forgiven. *Id.* at ¶ 38.  In 2021, it experienced another net loss, this time of $1,031,470.25. *Id.* at ¶ 39. In the first two quarters of 2022, before it shut down, TSG experienced another net loss of $773,357.62. *Id.* at ¶ 40.

In total, from 2017 through its closure on June 30, 2022, TSG experienced a net loss of $1,735,750.67. *Id.* at ¶ 41.

TSG filed for relief under Chapter 7 of the Bankruptcy Code on August 4, 2022 (the "Petition Date"). Case No. 22-12040 ECF 1. On the same day, the Trustee was appointed to

---

[1] Mandle incorrectly asserts that there are 14 Counts against her, but her motion to dismiss argues for the dismissal of all 15 Counts. *See* ECF 9 at 1.

administer the estate. Case No. 22-00095 ECF 1 at 4.[2] On July 3, 2024, Plaintiff initiated this adversary proceeding by filing a complaint ("Complaint") setting forth 28 counts against Mandle, James E. Nevels ("Nevels"), Glenn Becker ("Becker"), Denise Caruso ("Caruso"), and Mark Rogozinski ("Rogozinski," together with Mandle, Nevels, Becker, and Caruso, the "Defendants"). *See* ECF 1.

The Complaint names Mandle in 15 counts: (i) count III for breach of fiduciary duty ("Count III"); (ii) count IV for aiding and abetting breach of fiduciary duty ("Count IV"); (iii) count X for avoidance of preferential transfers pursuant to 11 U.S.C. § 547 ("Count X"); (iv) count XI for avoidance of actual intent fraudulent transfers pursuant to 11 U.S.C §§ 544(a) and (b)(1) ("Count XI"); (v) count XII for avoidance of actual intent fraudulent transfers pursuant to 11 U.S.C. § 548(a)(1)(A) ("Count XII"); (vi) count XIII for avoidance of actual intent fraudulent transfers pursuant to 6 Del. C. § 1304(a)(1) ("Count XIII"); (vii) count XIV for avoidance of constructively fraudulent transfers pursuant to 11 U.S.C. §§ 544(a) and (b)(1) ("Count XIV"); (viii) count XV for avoidance of constructively fraudulent transfers pursuant to 11 U.S.C. § 548(a)(1)(B) ("Count XV"); (ix) count XVI for avoidance of constructively fraudulent transfers pursuant to 6 Del. C. § 1304(a)(2) "Count XVI"); (x) count XVII for recovery of avoided transfers under 11 U.S.C. § 550 ("Count XVII"); (xi) count XVIII for disallowance of all claims under 11 U.S.C. § 502(d) and (j) ("Count XVIII"); (xii) count XX for conversion ("Count XX"); (xiii) count XXIV for unjust enrichment ("Count XXIV"); (xiv) count XXVII for civil conspiracy in relation to the "Becker Share Purchase Agreement," defined *infra*, ("Count XXVII"); and (xv) count XXVIII for civil conspiracy in relation to the Mandle Share Purchase Agreement, defined *infra* ("Count XXVIII"). *See id.*

---

[2] All citations to ECF that follow refer to the adversary proceeding at Case No. 22-00095.

On September 16, 2024, Mandle filed the instant Motion to Dismiss under Federal Rule of Civil Procedure 12(b)(6) ("Motion to Dismiss"). ECF 8 and 9. On October 7, 2024, Plaintiff filed a response (the "Response"). ECF 13.

### A. The Becker Share Purchase Agreement

As alleged in the Complaint, Becker was a director and officer of TSG from April 1, 2005, until his retirement on December 31, 2018. ECF 1 at ¶ 18. At the time Becker retired, he owned 37,350 shares of TSG stock. *Id.* at ¶ 56.

Becker and TSG were parties to a Shareholder Agreement (the "Becker Shareholder Agreement"). *Id.* at ¶ 58. The Becker Shareholder Agreement provided that upon Becker's retirement, TSG was required to perform a Fair Market Value ("FMV") calculation to determine the repurchase price of his shares. *Id.* at ¶ 59. The contractually mandated FMV calculation was set forth in a document entitled "Independent Accountants' Report on Applying Agreed-Upon Procedures." *Id.* at ¶ 60. TSG's outside accounting firm, Baker Tilly, performed the FMV calculation with respect to Becker's shares and arrived at a value of $0.04903 per share. *Id.* at ¶ 61. According to Baker Tilly's valuation, the total FMV of Becker's shares was $1,831. *Id.* at ¶ 62.

On March 13, 2019, Mandle, with other directors and officers of TSG, authorized a share purchase agreement through which Becker sold his shares to TSG for a price inflated to over 100 times the fair market value of the shares. *Id.* at ¶ 63. Notwithstanding the Baker Tilly FMV calculation, Mandle and the other directors and officers of TSG agreed and authorized TSG to enter into a share purchase agreement with Becker (the "Becker Share Purchase Agreement") that committed TSG to paying him $5.13 per share, or a total of $191,751.17, for shares that were only valued at $1,831. *Id.* at ¶ 63. The total purchase price was $189,920.17 more than the purchase

price that was required by the Becker Shareholder Agreement and the Independent Accountants' Report on Applying Agreed-Upon Procedures. *Id.* at ¶ 64. Mandle authorized TSG to enter into the inflated Becker Share Purchase Agreement despite TSG experiencing massive losses both in the years preceding the purchase of Becker's shares and in the year that TSG's directors and officers agreed to purchase Becker's shares. *Id.* ¶ 66.

The Becker Share Purchase Agreement mandated an up-front payment of twenty percent of the total purchase price of $191,751.17—approximately $38,350.23—and subsequent payments in five equal annual installments until the total indebtedness was paid off per the terms of the promissory note ("Becker Promissory Note") executed in connection with the Becker Share Purchase Agreement. *Id.* at ¶ 67.

As of the Petition Date, TSG had paid Becker $108,224, leaving $61,360.00 remaining to be paid under the Becker Share Purchase Agreement.

### B.  The Mandle Share Purchase Agreement

From 1995 until her official retirement in 2018[3], Mandle held varying positions at TSG, including administrative roles, President, CEO, Chief Compliance Officer, Treasurer, and Secretary. *Id.* at ¶ 70. After her official retirement, she continued to act as a director of TSG until at least September 16, 2020. *Id.* at ¶ 76.

Mandle and TSG were parties to a Shareholder Agreement (the "Mandle Shareholder Agreement"). *Id.* at ¶ 75. A copy of the Mandle Shareholder Agreement has not yet been located. *Id.* at ¶ 75.

On September 16, 2020, in an "Action by Unanimous Consent in Writing by the Board of Directors of The Swarthmore Group, Inc." — a Board that at this time was only comprised of

---

[3] Plaintiff pleads in the Complaint that Mandle retired in 2019 but avers in his Response that this was a typo. *See* ECF 13 at 2, n. 1.

Nevels and Mandle[4] — TSG agreed to purchase Mandle's 187,760 shares for $5.1339 per share for a total purchase price of $963,941 ("Mandle Share Purchase Agreement"). *Id.* at ¶ 76. The price per share of $5.13 in the Mandle Share Purchase Agreement was identical to the price per share in Becker's Share Purchase Agreement. *Id.* at ¶ 77. The Complaint alleges that the FMV calculation of Mandle's total shares was $0.04903 multiplied by Mandle's 187,760 shares for an aggregate FMV purchase price of $9,205.87[5]. *Id.* at ¶ 79 n. 2. The inflated price was over 100 times the FMV of the shares, and the total purchase price was $954,735 more than the aggregate FMV of Mandle's shares. *Id.* at ¶ 79.

Mandle authorized TSG to entered into the Mandle Share Purchase Agreement despite TSG experiencing massive losses each of the three preceding years. *Id.* at 81.

TSG did not have sufficient cash on hand to pay Mandle this price for her shares. *Id.* at ¶ 80. Therefore, TSG recorded the transaction as a loan payable to Mandle in the amount of $963,941 with a monthly payment obligation of $21,872.88. *Id.* at ¶ 80. The terms of the loan are further described in the promissory note attached to the Complaint at Exhibit D ("Mandle Promissory Note"). This purchase price was structured as forty-eight monthly installments of $21,872.88 — including an interest rate of 4.25% on the unpaid principal balance — until TSG paid off the total debt. *Id.* at ¶ 83.

As of the Petition date, TSG had paid Mandle twenty installment payments of $21,872.88, totaling $437,457.60, leaving a balance of $526,483 remaining to be paid according to the Mandle Share Purchase Agreement. *Id.* at ¶ 84. In the one-year period prior to the filing of

---

[4] The Complaint alleges that Caruso was an officer at the time Mandle and Nevels executed the Mandle Share Purchase Agreement, but that the Board of Directors was comprised of only Mandle and Nevels. *See* ECF 1 at ¶ 22.
[5] Plaintiff bases the calculation of the FMV of Mandle's shares on the Independent Accountants' Report on Applying Agreed Upon Procedures allegedly conducted pursuant to the Becker Shareholder Agreement. *See* ECF 1 Ex. B. The Complaint indicates an intent to obtain a copy of the Mandle Shareholder Agreement through discovery. *See id.* at ¶ 75. At this pre-discovery motion to dismiss stage, the Court, as it must, accepts as true Plaintiff's allegations as to the FMV of Mandle's shares.

the Petition in this case, Mandle received payments from TSG in the amount of $196,855.92. *Id.* at ¶ 121.

## III.   DISCUSSION

For the reasons that follow, the Court concludes that Plaintiff has pleaded sufficient facts to state plausible claims for Count III for breach of fiduciary duty; Count IV for aiding and abetting breach of fiduciary duty; Count XI for avoidance of actual intent fraudulent transfers pursuant to 11 U.S.C §§ 544(a) and (b)(1); Count XII for avoidance of actual intent fraudulent transfers pursuant to 11 U.S.C. § 548(a)(1)(A); Count XIII for avoidance of actual intent fraudulent transfers pursuant to 6 Del. C. § 1304(a)(1); Count XIV for avoidance of constructively fraudulent transfers pursuant to 11 U.S.C. §§ 544(a) and (b)(1); Count XV for avoidance of constructively fraudulent transfers pursuant to 11 U.S.C. § 548(a)(1)(B); Count XVI for avoidance of constructively fraudulent transfers pursuant to 6 Del. C. § 1304(a)(2); Count XVII for recovery of avoided transfers under 11 U.S.C. § 550; Count XVIII for disallowance of all claims under 11 U.S.C. § 502(d) and (j); Count XX for conversion; Count XXIV for unjust enrichment; and Counts XXVII and XXVIII for conspiracy. The Motion to Dismiss will therefore be denied as to those Counts.

Plaintiff has, however, failed to plead sufficient facts to state a plausible claim for Count X for avoidance of preferential transfers pursuant to 11 U.S.C. § 547. Count X will therefore be dismissed with leave to amend.

### A.  Applicable Legal Principles

#### i.   Federal Rule of Civil Procedure 12(b)(6)

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) ("Rule 12(b)(6)")[6] challenges the sufficiency of the factual allegations in a complaint. *In re UD*

---

[6] Made applicable to adversary proceedings in bankruptcy through Federal Rule of Bankruptcy Procedure 7012.

*Dissolution Corp.*, 629 B.R. 11, 29 (Bankr. D. Del. 2021) (citing *Kost v. Kozakiewicz*, 1 F.3d 176,

183 (3d Cir. 1993)). To survive a motion to dismiss, the complaint must "state a claim to relief

that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167

L.Ed.2d 929 (2007). A claim is plausible on its face when "the plaintiff pleads factual content that

allows the court to draw the reasonable inference that the defendant is liable for the misconduct

alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (citing

*Twombly*, 550 U.S. at 556). Determination of plausibility is "a context-specific task that requires

the reviewing court to draw on its judicial experience and common sense." *Connelly v. Lane

Constr. Corp.*, 809 F.3d 780, 786-787 (3d Cir. 2016) (citing *Iqbal*, 556 U.S. at 679). The court

must draw all reasonable inferences in favor of the plaintiff. *See, e.g., Alpizar-Fallas v. Favero*,

908 F.3d 910, 914 (3d Cir. 2018).

   The Third Circuit Court of Appeals ("Third Circuit") had stated that, under *Twombly* and

*Iqbal*, a court must take three steps when reviewing the sufficiency of a complaint:

> [f]irst, it must 'tak[e] note of the elements [the] plaintiff must plead to state a claim.'
> *Iqbal*, 556 U.S. at 675. Second, it should identify allegations that, 'because they are
> no more than conclusions, are not entitled to the assumption of truth.' *Id.* at 679.
> *See also Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 224 (3d Cir. 2011) ('Mere
> restatements of the elements of a claim are not entitled to the assumption of truth.')
> (citation and editorial marks omitted). Finally, '[w]hen there are well-pleaded
> factual allegations, [the] court should assume their veracity and then determine
> whether they plausibly give rise to an entitlement to relief.' *Iqbal*, 556 U.S. at 679.

*Connelly v. Lane Constr. Corp.*, 809 F.3d at 787.

### ii.        Federal Rules of Civil Procedure 8(a) and 9(b)

   Also relevant to Mandle's Motion to Dismiss are Federal Rules of Civil Procedure 8(a)

("Rule 8(a)")[7] and 9(b) ("Rule 9(b)")[8], which address how specific a plaintiff's allegations must

---

[7] Made applicable to adversary proceedings in bankruptcy through Federal Rule of Bankruptcy Procedure 7008.
[8] Made applicable to adversary proceedings in bankruptcy through Federal Rule of Bankruptcy Procedure 7009.

be to survive a motion to dismiss for failure to state a claim upon which relief can be granted.

*See, e.g.*, *Holmes v. Allstate Corp.*, 2012 U.S. Dist. LEXIS 24883, at *69 (S.D.N.Y., January 27,

2012). Rule 8(a) states that a pleading must contain "a short and plain statement of the claim

showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). For allegations of fraud,

Rule 9(b) applies and requires a party to "state with particularity the circumstances constituting

fraud or mistake." Fed. R. Civ. P. 9(b).

### B.  Adequacy of Plaintiff's Allegations

### i.  Group Pleading

First, Mandle argues that the Counts in which Mandle is named with other Defendants

should be dismissed for "group pleading." ECF 9 at 6.

Impermissible group pleading occurs where a complaint fails to distinguish between

defendants. *See e.g., Cupp v. Cty. of Lycoming*, No. 20-1784, 2021 U.S. Dist. LEXIS 188866, at

*5 (M.D. Pa. Sept. 30, 2021) (finding impermissible group pleading where complaint "lump[ed]

sixteen defendants together without setting forth what each particular defendant [was] alleged to

have done"). However, group pleading may be permissible where the complaint sets forth

sufficient facts to put individual defendants on notice of claims against them. *See e.g., Engel v.

Buchan*, 710 F.3d 698, 710 (7th Cir. 2013) (group pleading was permissible where "reading the

allegations sensibly and as a whole, there [was] no genuine uncertainty regarding who [was]

responsible for what" where two defendants accused of acting jointly were referred to generally in

complaint as "defendants").

Here, Plaintiff lists Mandle along with other Defendants in Counts X, Count XI, Count

XII, Count XIII, Count XIV, Count XV, Count XVI, Count XVII, Count XVIII, Count XXVII,

and Count XXVIII. In relation to each one of these Counts, the Complaint describes the

individual actions of Mandle and the benefits she received because of those actions. There is no

"genuine uncertainty" in these Counts as to which Defendant is alleged to have done what. As

such, mere "group pleading" alone does not justify dismissal of the Complaint.

### ii.    Count III: Breach of Fiduciary Duty

In Count III, Plaintiff seeks relief for Mandle's alleged breaches of fiduciary duty to TSG.

ECF 1 at ¶¶ 141-151.[9]

As a threshold matter, Mandle argues that claims for any alleged breach of fiduciary duty

occurring prior to August 5, 2020—two years prior to the Petition Date—are barred by the statute

of limitations. ECF 9 at 13. A statute of limitations defense may be raised by a motion under Rule

12(b)(6) if "the time alleged in the statement of a claim shows that the cause of action has not been

brought within the statute of limitations." *Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir. 2014)

(quoting *Robinson v. Johnson*, 313 F.3d 128, 134-35 (3d Cir. 2002)). Under 11 U.S.C. § 108(a):

> If applicable nonbankruptcy law […] fixes a period within which the debtor
> may commence an action, and such period has not expired before the date of
> the filing of the petition, the trustee may commence such action only before the
> later of—
>
> (1) the end of such period, including any suspension of such period
>     occurring on or after the commencement of the case; or
> (2) two years after the order for relief.

---

[9] The Complaint also asserts that Mandle breached fiduciary duties owed to creditors of TSG. *See, e.g.*, ECF 1 ¶ 143. Defendant argues that the Complaint does not adequately plead the existence of Mandle's fiduciary duties to creditors. ECF 9 at 12. The Delaware Supreme Court has held that creditors of an insolvent corporation may sue derivatively for breach of fiduciary duty. *Quadrant Structured Prods. Co. v. Vertin*, 102 A.3d 155, 176 (Del. Ch. 2014) (citing *N. Am. Catholic Educ. Programming Found., Inc. v. Gheewalla*, 930 A.2d 92, 103 (Del. 2007). However, as explained below, because the Complaint sufficiently pleads the existence of Mandle's fiduciary duties to TSG, Count III survives the Motion to Dismiss notwithstanding the question of whether Mandle also owed fiduciary duties to creditors, which can be more appropriately addressed at a later stage in the proceedings. *See e.g.*, *Emerald Capital Advisors Corp. v. Bayerische Moteren Werke Aktiengesellschaft (In re Fah Liquidating Corp.)*, 572 B.R. 117, 128 (Bankr. D. Del. 2017) ("insolvency is a factual inquiry that often evades determination at the motion to dismiss stage") (citing *Halperin v. Moreno (In re Green Field Energy Servs., Inc.)*, 2015 Bankr. LEXIS 2914, at *7 (Bankr. D. Del. Aug. 31, 2015)).

"[T]he Trustee has the limitations period, or two years from the Petition date, whichever is longer, to prosecute an action." *Cestone v. First Nat'l Cmty. Bank (In re Cestone)*, 2014 Bankr. LEXIS 886, at \*3 (Bankr. M.D. Pa., March 7, 2014).

A two-year statute of limitations applies to Plaintiff's claims arising from Mandle's breaches of fiduciary duty. *See* 42 Pa.C.S. § 5524(7); *see also* 10 Del. C. § 8119.[10] The Petition Date was August 4, 2022. The Becker Share Purchase Agreement was authorized on March 13, 2019, over three years prior to the Petition Date. Therefore, any facts in the Complaint that pertain to the Becker Share Purchase Agreement do not support the claim for breach of fiduciary duty due to the pre-petition expiration of the statute of limitations. Even so, as discussed below, Plaintiff has otherwise alleged sufficient facts within the statute of limitations pertaining to the Mandle Share Purchase Agreement—which Mandle executed on behalf of TSG in her role as Director on September 16, 2020, less than two years before the Petition Date— that support the timeliness of Count III.

Having established that the Complaint supports the timeliness of the breach of fiduciary duty claims related to the Mandle Share Purchase Agreement, the Court now proceeds to consider the merits of whether the allegations contained in the Complaint state a claim for relief for breaches of Mandle's fiduciary duties to TSG in connection with the Mandle Share Purchase Agreement.

"[D]irectors and officers of a corporate entity owe fiduciary duties to the corporation under both Pennsylvania and Delaware law." *Miller v. Nelson (In re Art Inst. of Phila. LLC)*, 2022 Bankr. LEXIS 68, at \*18 (Bankr. D. Del. Jan. 12, 2022) (citing *Quadrant Structured Products Co., Ltd., v. Vertin*, 102 A.3d at 171; *In re Total Containment, Inc.*, 335 B.R. 589, 602-603 (Bankr. E.D. Pa.

---

[10] The Shareholder's Agreement, at paragraph 11(b), provides that "[t]his Agreement...shall be governed by and construed in accordance with the laws of the State of Delaware." ECF 1 Ex. A. Where the Parties address both Delaware and Pennsylvania law in their filings, the Court addresses both state laws as appropriate.

2005)). A complaint states a viable claim against an officer or director for breach of fiduciary duty under Delaware law when it alleges that: "(1) the defendant took part in the challenged conduct, and (2) the defendant failed to demonstrate the due care attendant to his particular office in doing so." *Hurwitz v. Mahoney (In re Space Case)*, 2024 Bankr. LEXIS 902, at \*14 (Bankr. D. Del. April 15, 2024). The Third Circuit has held that, under Pennsylvania law, a plaintiff bringing a claim for breach of fiduciary duty must establish: (1) a fiduciary relationship existed, (2) the defendant "negligently or intentionally failed to act in good faith and solely for [the plaintiff's] benefit," and (3) the breach caused an injury to the plaintiff. *Avco Corp. v. Turner*, 2022 U.S. App. LEXIS 20256, 2022 WL 2901015, at \*2 (3d Cir. 2022) (citing *Snyder v. Crusader Servicing Corp.*, 231 A.3d 20, 32 (Pa. Super. Ct. 2020)).

The Complaint pleads that Mandle breached her duties of care and loyalty to TSG by knowingly approving TSG's payment of an inflated price per share to Mandle through the Mandle Share Purchase Agreement. ECF 1 at ¶ 78-80. The Complaint alleges that at the time of the Mandle Share Purchase Agreement, Mandle was a director of TSG, and therefore owed TSG duties of loyalty and care. *Id.* at ¶ 76. As a director of TSG, Mandle was obligated to know that TSG had experienced massive losses in each of the three preceding years leading up to the Mandle Share Purchase Agreement, and furthermore that TSG neither had sufficient cash to pay for these shares, nor was it in TSG's best financial interests to do so. *Id.* at ¶ 80-81. The fair market value of Mandle's shares is alleged to have only been $9,205.87. *Id.* at ¶ 79. Despite this, Mandle approved and entered the Mandle Share Purchase Agreement on behalf of TSG for her sole benefit, whereby she would profit $954,735.13. *Id.* at ¶ 83. The Plaintiff has therefore adequately pleaded that Mandle breached her fiduciary duties to TSG.[11]

---

[11] Mandle raises the business judgment rule as a defense to her alleged breach, arguing that there is a presumption in her favor that her actions were taken in the best interest of the company. ECF 9 at 9; *see, e.g., Stanziale v. Nachtomi*

The Motion to Dismiss will therefore be denied as to Count III.

### iii.   Count IV: Aiding and Abetting Breach of Fiduciary Duty

In Count IV, Plaintiff alleges that Mandle aided and abetted Nevels, Caruso, Becker, and Rogozinski in breaches of their fiduciary duties by allowing TSG to grossly overpay both Mandle and Becker for their shares. ECF 1 at ¶¶ 152-157. The facts in the Complaint that pertain to the Becker Share Purchase Agreement do not support the claim for aiding and abetting breach of fiduciary duty, as the Becker Share Purchase Agreement occurred outside the two-year statute of limitations for breach of fiduciary duty, as discussed *supra*. Plaintiff alleges that only Nevels, Mandle, and Caruso facilitated the Mandle Share Purchase Agreement. *Id.* at ¶ 82.[12]

To state a claim for aiding and abetting a breach of fiduciary duty under Delaware law, the plaintiff must allege: (1) the existence of a fiduciary relationship; (2) a breach of the fiduciary's duty; (3) knowing participation in that breach by the defendants; and (4) damages proximately caused by the breach. *In re Space Case*, 2024 Bankr. LEXIS 902, at *26. "In the context of aiding and abetting a breach of fiduciary duty, knowing participation 'requires that the third-party act with the knowledge that the conduct advocated or assisted constitutes such a breach.'" *Burtch v. Owlstone, Inc. (In re Advance Nanotech, Inc.)*, 2014 Bankr. LEXIS 1362, at *21 (Bankr. Del., April 2, 2014) (quoting *Malpiede v. Townson*, 780 A.2d 1075, 1097 (Del. 2001)).

---

*(In re Tower Air, Inc.)*, 416 F.3d 229, 238 (3d. Cir. 2005) (defining the business judgment rule). However, the Third Circuit has ruled that it "will not rely on an affirmative defense such as the business judgment rule to trigger dismissal of a complaint under Rule 12(b)(6)." *Id.; see also Buchwald Cap. Advisors LLC v. Schoen (In re OPP Liquidating Co.)*, 2022 Bankr. LEXIS 651, at *16 (Bankr. D. Del. March 14, 2022) (holding that the business judgment rule "is an affirmative defense and should not be considered at the motion to dismiss stage."). "Only if the complaint raises the business judgment rule on its face will courts consider its applicability at the motion to dismiss stage." *In re OPP Liquidating Co.*, 2022 Bankr. LEXIS 651, at *16. The Complaint does not raise the business judgment rule on its face. It is therefore inappropriate for consideration at this stage.

[12] The Complaint alleges that only Mandle and Nevels signed the Mandle Share Purchase Agreement. ECF 1 at ¶ 75. The Complaint indicates, however, that Caruso was an officer at the time Mandle and Nevels executed the Mandle Share Purchase Agreement. *Id.* at ¶ 22. The Complaint furthermore alleges that Caruso "facilitated" its execution. *Id.* at ¶ 351.

The standard under Pennsylvania law is substantially the same. *See In re Forks Specialty Metals Inc.,* 2023 Bankr. LEXIS 1187, at *54 (Bankr. E.D. Pa. April 30, 2023) ("the elements of a claim for aiding and abetting a breach of fiduciary duty claim are (i) a breach of fiduciary duty owed to another, (ii) knowledge of the breach by an aider and abettor, and (iii) substantial assistance or encouragement by the aider and abettor in effecting that breach.") (citations omitted). Courts that have considered aiding and abetting claims under Pennsylvania law have recognized that the knowledge element requires actual knowledge of the breach. *Marion v. Bryn Mawr Trust Co.,* 288 A.3d 76, 78 (Pa. 2023). Furthermore, the Supreme Court of Pennsylvania has recently observed:

> [A]ctual knowledge can be proved through 'inference from circumstantial evidence.' *Intel Corp. Inv. Pol'y Comm. v. Sulyma*, 140 S.Ct. 768, 779, 206 L. Ed. 2d 103 (2020), *quoting Farmer v. Brennan*, 511 U.S. 825, 842, 114 S. Ct. 1970, 128 L. Ed. 2d 811 (1994); *see also* Restatement (Third) of Torts: Liab. for Econ. Harm §28 cmt. c ('If the defendant's knowledge cannot be proven directly, it sometimes may be inferred from circumstantial evidence such as the defendant's possession of documents or presence during relevant conversations.'). Moreover, 'willful blindness may support a finding of actual knowledge.' *Unicolors, Inc. v. H&M Hennes & Mauritz, L.P.*, 142 S.Ct. 941, 948, 211 L. Ed. 2d 586 (2022).

*Id.*

The Complaint adequately pleads that, by virtue of their positions as directors and officers, Nevels and Caruso each owed fiduciary duties to TSG. *See* ECF 1 at 1-2. Furthermore, the Complaint adequately pleads that they, in concert with Mandle, breached those duties by allegedly inflating the purchase price of Mandle's stock in 2020, which Plaintiff adequately alleges contributed to the financial decline of TSG. *Id.* at ¶¶ 69-84; ¶¶ 152-157.

Mandle argues that the Complaint does not allege that Mandle had knowledge of conduct by Nevels and Caruso that amounted to breach of fiduciary duty. ECF 9 at 15. The Court disagrees. Plaintiff has alleged facts sufficient to satisfy an inference of Mandle's knowledge of these

14

Defendants' breaches of fiduciary duty under both the Delaware and Pennsylvania standards. As discussed above, the Complaint sets forth that Mandle was a director, and therefore had knowledge of the fiduciary duties of the other officers and directors, the declining financial state of TSG, and the alleged inflated purchase price of the shares.

The Court will therefore deny the Motion to Dismiss as to Count IV.

### iv.    Count X: Preferential Transfers

In Count X, Plaintiff seeks to avoid transfers of TSG's property to Defendants, including Mandle, during the one-year period prior to the Petition Date pursuant to 11 U.S.C. § 547. ECF 1 at ¶¶ 203-216. Plaintiff avers that Mandle received at least $196,855.92 in payments from TSG from August 4, 2021, to August 4, 2022. *Id.* at ¶ 121; *id.* at Ex. G.

The "claw back" period for preferential transfers is ninety days prior to the petition date for non-insiders and one year prior to the petition date "if such creditor at the time of such transfer was an insider." *See* 11 U.S.C. § 547. Mandle argues that Plaintiff has not adequately pleaded that Mandle was an insider. ECF 9 at 7.

Under 11 U.S.C. § 101(31)(B), "[t]he term 'insider' includes . . . (B) if the debtor is a corporation--(i) director of the debtor; (ii) officer of the debtor; (iii) person in control of the debtor; (iv) partnership in which the debtor is a general partner; (v) general partner of the debtor; or (vi) relative of a general partner, director, officer, or person in control of the debtor." *Shubert v. Lucent Techs. Inc (In re Winstar Communs., Inc.)*, 554 F.3d 382, 395 (3d Cir. 2009). "'The language of section 547(b)(4)(B) clearly states that an insider relationship is to be determined on the *exact date* of the challenged transfer.'" *Wilen v. Pamparo Sav. Bank, S.L.A. (In re Bayonne Med. Ctr.),* 429 B.R. 152, 183 (Bankr. D.N.J. 2010) (citing *Dent v. Martin*, 86 B.R. 290, 292 (S.D. Fla. 1988) (emphasis in original).

Plaintiff avers that Mandle held varying positions during her tenure at TSG, including administrative roles, President, CEO, Chief Compliance Officer, Treasurer, and Secretary. *Id.* at ¶ 70. Furthermore, Plaintiff avers that, despite her official retirement in 2018, Mandle continued to act as a director of TSG until at least September 2020. *Id.* at ¶ 76. Plaintiff includes a copy of the Mandle Share Purchase Agreement, which Mandle signed as a director of TSG on September 16, 2020. ECF 1 Ex. D. The Complaint therefore sufficiently pleads that Mandle was an insider up to September 16, 2020.

However, Plaintiff fails to plead facts indicating in what capacity Mandle was an insider after the Mandle Share Purchase Agreement was signed on September 16, 2020. Plaintiff provides no allegations that Mandle continued to act as a director after this date. Furthermore, Plaintiff does not allege anywhere in the Complaint that Mandle was a non-statutory insider. *See In re Winstar Communs., Inc.*, 554 F.3d at 395 ("…courts have identified a category of creditors, sometimes called 'non-statutory insiders,' who fall within the definition [of 11 U.S.C. § 101(31)(B)] but outside of any of the enumerated categories").

The Court has no basis to infer that Mandle was an insider after September 16, 2020. Therefore, the Court will treat her as a non-insider for the purposes of determining which payments made to Mandle pursuant to the Mandle Share Purchase Agreement may be eligible for avoidance under § 547. The correct preference period for the payments Mandle received under the Mandle Share Purchase Agreement therefore includes the 90 days prior to the Petition Date, from May 6, 2022, to August 4, 2022 ("Preference Period"). Plaintiff avers that TSG made at least nine preferential transfers to Mandle, each in the amount of $21,872.88, from September 13, 2021, to April 29, 2022. ECF 1 Ex. G. None of these payments falls within the 90-day Preference Period.

Count X will therefore be dismissed as against Mandle with leave to amend.

v.      **Counts XI to XVI: Avoidance of Fraudulent Transfers**

In Counts XI through XVI, each discussed in more detail below, Plaintiff seeks to avoid fraudulent transfers pursuant to: (i) § 548 of the Bankruptcy Code, (ii) the Delaware Uniform Fraudulent Transfer Act ("DUFTA") at 6 Del. C. § 1304, and (iii) Plaintiff's "strong arm" avoidance powers under § 544(a) and (b)(1) of the Bankruptcy Code.[13] ECF 1 at ¶¶ 217-297. The extent of Plaintiff's powers under § 544 is governed by the substantive nonbankruptcy law of the jurisdiction governing the cause of action in question. *5 Collier on Bankruptcy* ¶ 544.02[1] (citing *Midlantic Nat'l Bank v. Bridge (In re Bridge)*, 18 F.3d 195, 199 (3d Cir. 1994)). In this case, because Plaintiff brings claims under 6 Del. C. § 1304, the governing law determining the extent of the trustee's strong-arm powers is the DUFTA. *See* ECF 1 at ¶ 245-258; ¶ 286-297. Therefore, in addressing Plaintiff's claims under § 544, the Court need only address the relevant provisions of the DUFTA.

a.   *Transfers at Issue*

Under 11 U.S.C. § 548(a), a trustee "may avoid any transfer… of an interest of the debtor in property, or any obligation… incurred by the debtor, that was made or incurred on or within 2 years before the date of the filing of the petition" under certain circumstances. Similarly, under § 1304(a) of the DUFTA, a trustee may avoid "[a] transfer made or obligation incurred by a debtor" when certain conditions are met. The provisions of § 548 and the DUFTA are substantially the same. *Crystallex Int'l Corp. v. Petróleos de Venez., S.A.*, 879 F.3d 79, 86 (3d. Cir. 2018) (citations omitted).

---

[13] § 544(a) empowers the trustee to avoid certain transfers that could have been avoided by hypothetical creditors, whether or not such creditors actually exist. *5 Collier on Bankruptcy* ¶ 544.01 (Richard Levin & Henry J. Sommer eds., 16th ed.). § 544(b)(1) empowers the trustee to step into the shoes of an actual creditor with an allowable unsecured claim that could have avoided a transfer under applicable nonbankruptcy law. *Id.*

Here, the Complaint sets forth the existence of two categories of transfers and obligations: (i) the Mandle Promissory Note, dated September 16, 2020, and (ii) the nine payments to Mandle from September 13, 2021, to April 29, 2022. A promissory note may constitute an obligation for purposes of a fraudulent transfer claim. *See Fid. Bond & Mortg. v. Brand*, 371 B.R. 708, 714 (E.D. Pa. 2007) (noting that the Bankruptcy Court below found that promissory notes constitute transfers and obligations under the Pennsylvania Uniform Fraudulent Transfers Act ("PUFTA")).[14] Therefore, both the Mandle Promissory Note and the payments may constitute transfers or obligations under § 548 and § 1304(a) of the DUFTA.

### b.  *Timing*

The lookback period under § 548 is two years from the Petition Date. 11 U.S.C. § 548(a)(1). The lookback period under the DUFTA, and therefore also under § 544[15], is four years from the Petition Date. 6 Del. C. § 1309.

The Mandle Promissory Note obligating TSG to pay Mandle for her shares is dated September 16, 2020, less than two years before TSG filed its Petition on August 4, 2022. *See* ECF 1 Ex. D; ECF 1 at ¶ 119. The nine payments to Mandle pursuant to the Mandle Share Purchase Agreement occurred between September 13, 2021, and April 29, 2022, within two years of the August 4, 2022, Petition Date. Therefore, the Mandle Promissory Note and payments fall within the two-year lookback period under § 548 and the four-year look back period under the DUFTA.

### c.  *Actual Intent Fraudulent Transfers*

---

[14] As with the DUFTA, the language in the relevant constructive fraud provisions of the PUFTA closely resembles the language of § 548(a)(1)(B). *Compare* 12 Pa. C.S. § 5104(a)(2) *with* § 548(a)(1)(B); *see also Crystallex Int'l Corp. v. Petróleos de Venez., S.A.*, 879 F.3d at 86 (noting that the provisions of § 548 and the DUFTA are substantially the same).

[15] As discussed above, § 544 empowers the trustee to avoid certain transfers pursuant to applicable nonbankruptcy law, which in this case is the DUFTA. *See* 11 U.S.C. § 544.

Plaintiff asserts claims for actual fraudulent transfers in Count XI pursuant to his powers under § 544(a) and (b)(1)[16]; Count XII pursuant to § 548(a)(1)(A); and Count XIII under the DUFTA, 6 Del. C. § 1304(a)(1). ECF 1 at ¶¶ 217-258.

Under § 548(a)(1)(A), a trustee may avoid a transfer or obligation if the debtor "made such transfer or incurred such obligation with actual intent to hinder, delay, or defraud any entity to which the debtor was or became, on or after the date that such transfer was made or such obligation was incurred, indebted[.]" § 1304(a)(1) of the DUFTA holds substantially the same requirements as § 548(a)(1)(A).[17] Courts have held that the pleading requirements for § 548(a)(1)(A) and § 1304(a)(1) are identical. *See, e.g., Beskrone v. OpenGate Capital Grp. (In re Pennysaver USA Publ'g, LLC)*, 587 B.R. 445, 459 (Bankr. D. Del. 2018).

Rule 9(b)(6) imposes a heightened pleading standard for claims asserting actual intent fraud, requiring these complaints to "set forth facts with sufficient particularity to apprise the defendant of the charges against him so that he may prepare an adequate answer." *In re USDigital, Inc.*, 443 B. R. 22, 33 (Bankr. D. Del. 2011). However, "in the bankruptcy context, Rule 9(b) should be interpreted liberally, particularly when the trustee . . . is bringing the action." *Pardo v. Gonzaba (In re APF Co.)*, 308 B.R. 183, 188 (Bankr. Del. 2004) (citing *Levitt v. Riddell Sports (In re MacGregor Sporting Goods)*, 199 B.R. 502, 514-15 (Bankr. D.N.J. 1995)).

A plaintiff may establish the requisite intent for an actual fraudulent transfer claim through either direct or circumstantial evidence. *Alameda Rsch. Ltd. V. Giles (In re FTX Trading Ltd.)*, 2024 Bankr. Lexis 2584, at *35 (Bankr. D. Del. Oct. 23, 2024) (citations omitted). In the absence

---

[16] *Supra* n.13.
[17] "A transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation: (1) With actual intent to hinder, delay or defraud any creditor of the debtor […]." 6 Del. C § 1304(a)(1).

of direct evidence, courts rely on "'badges of fraud,' *i.e.*, circumstances so commonly associated with fraudulent transfers that their presence gives rise to an inference of intent." *Id.* (citing *Kirschner v. Large S'holders*, 10 F.4th 147, 160 (2d Cir. 2021)). That said, the presence or absence of any single badge of fraud is not conclusive. *Zohar CDO 2003-1, Ltd. V. Patriarch Partners, LLC (In re Zohar III, Corp.)*, 631 B.R. 133, 174 (Bankr. Del. 2021) (citations omitted). "The proper inquiry is whether the badges of fraud are present, not whether some factors are absent. Although the presence of a single factor, *i.e.* badge of fraud, may cast suspicion on the transferor's intent, the confluence of several in one transaction generally provides conclusive evidence of an actual intent to defraud." *Id.* (cleaned up). "'Whatever badges of fraud a court uses, no particular badge is necessary, nor is any combination sufficient. The matter is always factual—the presence of badges of fraud permits but does not compel a finding of actual intent.'" *Feldman v. Carbone (In re Carbone)*, 615 B.R. 76, 80-81 (Bankr. E.D. Pa. 2020) (citing *5 Collier on Bankruptcy* ¶ 548.04[1][b][ii]). "No one factor or particular combination of factors is necessary to support a finding of fraud; even a strong showing of a single factor may be enough." *In re Fitzpatrick Container Co.*, 663 B.R. 648, 657 (Bankr. E.D. Pa. 2024) (citing *In re Carbone*, 615 B.R. at 80).

Badges of fraud that courts generally consider include: (1) the relationship between the debtor and the transferee; (2) consideration for the conveyance; (3) insolvency or indebtedness of the debtor; (4) how much of the debtor's estate was transferred; (5) reservation of benefits, control, or dominion by the debtor over the property transferred; and (6) secrecy or concealment of the transaction. *5 Collier on Bankruptcy* ¶ 548.04; *see also In re Zohar III, Corp.*, 631 B.R. at 174.

Here, the Complaint sets forth facts sufficient for the Court to infer multiple badges of fraud. First, the Complaint allows for an inference that the alleged fair market value of Mandle's 187,760 shares, at $9,205.87, was not reasonably equivalent to the amount of the obligation TSG

incurred to Mandle, at $963,941 plus 4.25% interest. ECF 1 at ¶¶ 76, 79. Concerning the relationship between TSG and Mandle, as discussed above, Plaintiff has adequately pleaded that Mandle was an insider of TSG at the time she signed the Mandle Share Purchase Agreement and accompanying Mandle Promissory Note—pursuant to which, it should be noted, Mandle received significant payments. *See id.* at ¶ 76; *id.* at Ex. G. Regarding the amount of assets transferred in relation to TSG's total assets, TSG promised to pay Mandle $963,941 in September of 2020. However, TSG had suffered significant net losses in the three preceding years and only earned an illusory profit of $531,232.30 in 2020 due to federal PPP loans that were forgiven. *See id.* at ¶ 76, 34-38.

As for the question of insolvency, "[i]nsolvency is a factual inquiry that often evades determination at the motion to dismiss stage." *In re Fah Liquidating Corp.*, 572 B.R. at 128 (citing *In re Green Field Energy Servs., Inc.*, 2015 Bankr. LEXIS 2914, at *7). In *In re Green Field Energy Servs., Inc.*, the court held that, although the plaintiff-trustee needed to "do more than baldly assert insolvency, […] certainly something short of a detailed financial analysis [would] suffice" at the motion to dismiss stage. 2015 Bankr. LEXIS 2914, at *44. The court therefore inferred insolvency for the purposes of the motion to dismiss "based on the dire financial figures provided in the Complaint." *Id.* at *44-45.

Here, the Complaint has similarly set forth sufficient allegations for the Court to infer insolvency at the time of the Mandle Share Purchase Agreement in September 2020 and during the nine payments TSG made to Mandle from September 13, 2021, to April 29, 2022. The Complaint alleges that TSG experienced massive losses leading up to the Mandle Share Purchase Agreement, with net losses of $262,781.70 in 2017, $81,725.19 in 2018, and $117,648.21 in 2019. ECF 1 ¶ 35-39. In 2020, TSG experienced a net profit of $531,232.30 due primarily to federal

loans that were forgiven. *Id.* at 38. TSG experienced further massive losses following the Mandle Share Purchase Agreement and during the period in which the nine payments were made: $1,031,470.25 in 2021 and $773,357.62 in the first two quarters of 2022 before TSG ceased operations. *Id.* at ¶ 34-40. In total, from 2017 through its closure in 2022, TSG suffered a net loss of $1,735,750.67. *Id.* at ¶ 41. "Although more detailed analysis may be required to prove insolvency at trial, the *Twombly* plausibility standard 'simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of' the necessary element." *In re Fah Liquidating Corp.*, 572 B.R. at 128 (citing *Twombly*, 550 U.S. at 556).

Plaintiff has sufficiently pled the existence of multiple badges of fraud. The Motion to Dismiss will therefore be denied as to Counts XI, XII, and XIII.

### d. *Constructively Fraudulent Transfers*

In Counts XIV, XV, and XVI, the Complaint seeks to avoid constructively fraudulent transfers pursuant to §§ 544(a) and (b)(1)[18]; § 548(a)(1)(B); and 16 Del. C. § 1304(a)(2). ECF 1 at ¶¶ 259-297.

Under § 548(a)(1)(B), a trustee may avoid a transfer or obligation if the debtor:

> (i) received less than a reasonably equivalent value in exchange for such transfer or obligation; and
> (ii)
> (I) was insolvent on the date that such transfer was made or such obligation was incurred, or became insolvent as a result of such transfer or obligation […or]
> (III) intended to incur, or believed that the debtor would incur, debts that would be beyond the debtor's ability to pay as such debts matured[.]

The elements of § 1304(a)(2) are substantially the same as those of § 548(a)(1)(B).[19] *See Burch v. Opus, LLC (In re Opus East, LLC)*, 528 B.R. 30, 82 (Bankr. D. Del. 2015).

---

[18] *Supra* n.13.
[19] "A transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred

To adequately plead a constructive fraud claim, "'all that is needed at this stage is an allegation that there was a transfer for less than reasonably equivalent value at a time when the [Debtor was] insolvent.'" *Stanziale v. Brown-Minneapolis Tank ULC, LLC (In re BMT-NW Acquisition, LLC)*, 582 B.R 846, 856 (Bankr. D. Del. 2018) (citing *In re AgFeed USA, LLC*, 546 B.R. 318, 336 (Bankr. D. Del. 2016)).

The Third Circuit applies a totality of the circumstances test to determine reasonably equivalent value. *Miller v. Greenwich Capital Fin. Prods. (In re Am. Bus. Fin. Servs.)*, 361 B.R. 747, 760 (Bankr. D. Del. 2007). At the motion to dismiss stage, a trustee need only identify the transfer at issue by date and face amount and allege that the conveyance was made without fair consideration while the debtor was insolvent. *Stanziale v. Brown-Minneapolis Tank ULC, LLC (In re BMT-NW Acquisition, LLC)*, 582 B.R. 846, 857 (Bankr. D. Del. 2018) (citing *In re FAH Liquidating Corp.*, 572 B.R. at 127).

Plaintiff has set forth the date of the Mandle Share Purchase Agreement—September 16, 2020—and the date of each of the nine transfers from September 13, 2021, to April 29, 2022. ECF 1 Ex. G. As discussed above, the Plaintiff's assertion that Mandle's 187,760 shares were not reasonably equivalent to the amount of the obligation— $963,941 plus 4.25% interest, where the alleged fair market value of Mandle's shares was only $9,205.87—sets forth a plausible claim that the value exchanged was not reasonably equivalent to the actual value of the shares.

Similarly, "insolvency is a factual inquiry that often evades determination at the motion to dismiss stage." *In re Fah Liquidating Corp.*, 572 B.R. at 128 (citing *In re Green Field Energy*

---

the obligation: [...] (2) Without receiving a reasonably equivalent value in exchange for the transfer or obligation, and the debtor: a. [w]as engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction; or b. [i]ntended to incur, or believed or reasonably should have believed that the debtor would incur, debts beyond the debtor's ability to pay as they became due." 6 Del. C. § 1304(a)(2).

*Servs., Inc.,* 2015 Bankr. LEXIS 2914, at *7). As explained above in the discussion of badges of

fraud, *supra* Section III.B.v.d., the Complaint sets forth sufficient allegations for the Court to infer

insolvency at the time of the Mandle Share Purchase Agreement in September 2020 and during

the nine payments TSG made to Mandle from September 13, 2021, to April 29, 2022.

Plaintiff has adequately pleaded the elements of constructively fraudulent transfers. The

Motion to Dismiss will therefore be denied as to Counts XIV, XV, and XVI.

### vi.    Counts XVII and XVIII: Recovery of Avoided Transfers and Disallowance of Claims

In Count XVII, Plaintiff seeks to recover avoided transfers under 11 U.S.C. § 550[20]. ECF

1 at ¶¶ 289-301. In Count XVIII, Plaintiff seeks to disallow all claims under 11 U.S.C. § 502(d)

and (j).[21] *Id.* at ¶¶ 302-307. These Counts are both dependent on the success of the preference and

fraudulent transfer claims. *See* 11 U.S.C. § 502(d) and (j); 11 U.S.C. § 550(a).

As the fraudulent transfer claims have not been dismissed, the Motion to Dismiss will be

denied as to Counts XVII and XVIII.

### vii.    Count XX: Conversion

In Count XX, Plaintiff seeks relief against Mandle under the theory of conversion, alleging

that she unjustifiably took possession of TSG's money for her exclusive use and benefit, thereby

converting property belonging to the bankruptcy estate. ECF 1 at ¶¶ 312-315.

---

[20] "Except as otherwise provided in this section, to the extent that a transfer is avoided under section 544, 545, 547, 548, 549, 553(b), or 724(a) of this title [11 USCS § 544, 545, 547, 548, 549, 553(b), or 724(a)], the trustee may recover, for the benefit of the estate, the property transferred, or, if the court so orders, the value of such property, from—(1) the initial transferee of such transfer or the entity for whose benefit such transfer was made; or (2) any immediate or mediate transferee of such initial transferee." 11 U.S.C. § 550(a).

[21] "Notwithstanding subsections (a) and (b) of this section, the court shall disallow any claim of any entity…that is a transferee of a transfer avoidable under section 522(f), 522(h), 544, 545, 547, 548, 549, or 724(a) of this title [11 USCS § 522(f), 522(h), 544, 545, 547, 548, 549, or 724(a)][.]" 11 U.S.C. § 502(d). "A claim that has been allowed or disallowed may be reconsidered for cause." 11 U.S.C. § 502(j).

A two-year statute of limitations applies to claims for conversion in Pennsylvania and a three-year limitation applies in Delaware.[22] 42 Pa.C.S. § 5524(3); 10 Del. C. § 8106; *see also Winner Acceptance Corp. v. Return on Capital Corp.* 2008 Del. Ch. LEXIS 196, at *43 (Del Ch. Dec. 23, 2008) (observing that a three-year statute of limitations applied to a conversion claim under Delaware law). The Petition Date was August 4, 2022. The Mandle Share Purchase Agreement, which was signed September 16, 2020, and the nine payments TSG made to Mandle from September 13, 2021, to April 29, 2022, fall within both the Pennsylvania and Delaware statutes of limitations.

Under Delaware law, conversion is "'any distinct act of dominion wrongfully exerted over the property of another, in denial of [the plaintiff's] right, or inconsistent with it.'" *Kuroda v. SPJS Holdings, L.L.C.*, 971 A.2d 872, 889 (Del. Ch. 2009) (citing *Drug, Inc. v. Hunt*, 35 Del. 339, 5 W.W. Harr. 339, 168 A. 87, 93 (Del. 1933)). Similarly, under Pennsylvania law, conversion is the "'deprivation of another's right of property, or use or possession of a chattel, or other interference therewith, without the owner's consent and legal justification.'" *Atlantic States Insurance Company v. Copart, Inc.*, 609 F.Supp.3d 379, 393 (E.D. Pa. 2023) (quoting *Universal Premium Acceptance Co. v. York Bank & Tr. Co.*, 69 F.3d 695, 704 (3rd Cir. 1995) (citations omitted).

Furthermore, under Delaware law, "[w]here property was initially lawfully possessed by a defendant, conversion requires a demand for return of the property converted prior to filing an action." *Touch of Italy Salumeria & Pasticceria, LLC v. Bascio*, 2014 Del. Ch. LEXIS 2, at *27 (Del. Ch. Jan. 13, 2014) (citing *CIT Communs. Fin. Corp. v. Level 3 Communs., LLC*, 2008 Del. Super. LEXIS 225, 2008 WL 2586694, at *2 (Del. Super. June 6, 2008)). "However, this demand requirement is not absolute, and 'is excused . . . when the alleged wrongful act is of such a nature

---

[22] *See supra* n.10.

as to amount, in itself, to a denial of the rights of the real owner.'" *Id.* And similarly, under Pennsylvania law, "[w]hen a defendant first possesses an item *rightfully*, he or she becomes a converter only after refusing to deliver the item on demand." *Magnesita Refractories Co. v. Tianjin New Century Refractories Co.*, 2019 U.S. Dist. LEXIS 32559, at *46 (E.D. Pa. 2022) (citation omitted) (emphasis in original).

Mandle argues that Plaintiff has failed to plead that the Mandle Share Purchase Agreement was entered into without consent of TSG. ECF 9 at 30. However, the Complaint alleges that Mandle was one of only two Board members at the time the Mandle Share Purchase Agreement was executed which, along with the alleged significantly inflated purchase price of Mandle's shares, permits the Court to infer that an agreement executed in alleged violation of Mandle and Nevels' fiduciary duties to TSG was not validly consented to by TSG. ECF 1 at ¶ 76. For purposes of the Motion to Dismiss, the Plaintiff has therefore alleged facts sufficient to support an inference that TSG did not give valid consent to enter the Mandle Share Purchase Agreement. *See Seitz v. 6130 West, LLC (In re Joey's Steakhouse, LLC)*, 474 B.R. 167, 185 (Bankr. E.D. Pa. 2012) (denying a motion to dismiss for conversion where "circumstances suggest[ed] a lack of consent.").

Mandle argues that Plaintiff fails to allege demand and refusal by the Trustee, and therefore that Plaintiff has failed to establish an essential element of conversion. ECF 9 at 30. However, as discussed above, conversion requires demand and refusal when the property at issue is obtained by the defendant *lawfully*. As discussed above, the Complaint sufficiently alleges that Mandle authorized and entered into the Mandle Share Purchase Agreement unlawfully, through breach of her fiduciary duties. It alleges furthermore that she received the nine payments as a direct result of that breach. Because Plaintiff has alleged that Mandle authorized and entered the Mandle Share

Purchase Agreement unlawfully, and received the resulting payments pursuant to that agreement, the requirement for demand and refusal is excused at this early stage. *See Touch of Italy Salumeria & Pasticceria, LLC v. Bascio*, 2014 Del. Ch. LEXIS 2, at *27.

The Motion to Dismiss will therefore be denied as to Count XX.

### viii.    Count XXIV: Unjust Enrichment

In Count XXIV, the Plaintiff seeks relief for unjust enrichment. ECF 1 at ¶¶ 329-333. Plaintiff alleges that, through the Mandle Share Purchase Agreement, Mandle unjustifiably received the benefits of the substantial sum expended by TSG to purchase her shares at a price far above fair market value, and that it would be unconscionable for her to retain those benefits without compensating TSG. *Id.* at ¶ 332.

A viable claim for unjust enrichment under Pennsylvania law alleges: (1) benefits conferred on defendant by plaintiff; (2) appreciation of such benefits by defendant; and (3) acceptance and retention of such benefits under such circumstances that it would be inequitable for defendant to retain the benefit without payment of value. *Stoeckinger v. Presidential Fin. Corp. of Delaware Valley*, 948 A.2d 828, 833 (Pa. Super. Ct. 2008) (citation omitted). "'[T]he most significant element of the doctrine is whether the enrichment of the defendant is *unjust*.'" *Id.* (citing *Styer v. Hugo*, 422 Pa. Super. 262, 619 A.2d 347, 350 (Pa. Super. 1993) (emphasis in original)). Similarly, under Delaware law, the elements of unjust enrichment include (1) an enrichment, (2) an impoverishment, (3) a relation between the enrichment and impoverishment, (4) the absence of justification, and (5) the absence of a remedy provided by law. *Nemec v. Shrader*, 991 A.2d 1120, 1130 (Del. 2010) (citations omitted).

Plaintiff has adequately pleaded unjust enrichment under both Pennsylvania and Delaware law. The Complaint sets forth that Mandle benefitted from the alleged inflated purchase price of

her shares when TSG purchased them under the Mandle Share Purchase Agreement for a total cost of $963,941. ECF 1 at ¶ 330. It sets forth facts to show that, as a result, TSG lost a significant amount of money, plummeting further into alleged insolvency subsequent to the execution of the Mandle Share Purchase Agreement. *Id.* at ¶¶ 76-84. The allegations of the Complaint suggest that the Mandle Share Purchase Agreement was inequitable and unjust because the purchase price was over 100 times the alleged fair market value of the shares, and the Mandle Share Purchase Agreement was entered into through the alleged breach of Mandle's fiduciary duties as a director. *Id.* at ¶¶ 76, 79. Plaintiff has therefore sufficiently alleged unjust enrichment.

In addition to arguing that Plaintiff does not state a claim, Mandle argues that 1) the Plaintiff's fraudulent transfer claims offer an adequate remedy at law, and 2) the doctrine of unjust enrichment is not applicable because the relationship between the parties is founded on a written agreement. ECF 9 at 30-31 (citing *Moore v. Angie's List, Inc.*, 118 F.Supp.3d 802, 820 (E.D. Pa. 2015) ("Under Pennsylvania law, the quasi-contractual doctrine of unjust enrichment is inapplicable when the relationship between the parties is founded on a written agreement or express contract.") (cleaned up).

Mandle's first argument fails because, at the pleading stage, "it is entirely acceptable to pursue alternative theories." *In re Fah Liquidating Corp.*, 572 B.R. at 131. Accordingly, the Trustee is entitled to plead both claims of unjust enrichment and fraudulent transfers.

Mandle's second argument fails because the lawfulness of the "written agreement" is itself at issue. *Cf. Grudkowski v. Foremost Ins. Co.*, 556 F. App'x 165, 170 n.8 (3d Cir. 2014) ("pleading both breach of contract and unjust enrichment is plausible only when the validity of the contract itself is actually disputed, making unjust enrichment a potentially available remedy.") (cleaned up).

28

The Motion to Dismiss will therefore be denied as to Count XXIV.

### ix.    Counts XXVII and XXVIII: Civil Conspiracy

In Counts XXVII and XXVIII, Plaintiff seeks relief for civil conspiracy. ECF 1 at ¶¶ 344-353. Count XXVII alleges that Mandle formed a malicious combination with co-Defendants Nevels, Becker, Caruso, and Rogozinski for the purpose of enriching themselves at the expense of the bankruptcy estate through the Becker Share Purchase Agreement. *Id.* at ¶ 345. Count XXVIII alleges that Mandle formed such a conspiracy with Nevels and Caruso to execute the Mandle Share Purchase Agreement. *Id.* at ¶¶ 349-353.

"'Civil conspiracy is not an independent cause of action; it must be predicated on an underlying wrong.'" *Hydrogen Master Rights, Ltd. V Weston*, 228 F.Supp.3d 320, 341 (D. Del 2017) (quoting *Kuroda v. SPJS Holdings*, L.L.C., 971 A.2d at 892).

Mandle argues that Plaintiff does not allege an underlying wrong to support the claim for conspiracy. ECF 9 at 33. However, the Complaint alleges that Mandle conspired with co-defendants Nevels, Becker, Caruso, and Rogozinski to fraudulently transfer TSG's assets to Becker pursuant to the Becker Share Purchase Agreement. ECF 1 at ¶ 53-68.[23] Count XXVII for civil conspiracy in relation to the Becker Share Purchase Agreement may be predicated on these allegations. Furthermore, as discussed above, Plaintiff has sufficiently alleged claims for fraudulent transfer of TSG's assets, breach of fiduciary duty, and unjust enrichment in relation to

---

[23] The fraudulent transfer claims brought against Becker in Counts XI, XII, XIII, XIV, XV, and XVI have not been dismissed. As discussed above, the allegations related to the Becker Share Purchase Agreement do not support the claims for breach of fiduciary duty against Mandle because they are barred by the relevant statutes of limitations. However, the Complaint's fraudulent transfer claims against Becker concerning the Becker Share Purchase Agreement are not time barred under the DUFTA. The Complaint alleges that the Becker Share Purchase Agreement was executed on March 13, 2019. ECF 1 at ¶ 63. The Petition Date was August 4, 2022. Although the Becker Share Purchase Agreement execution date falls outside the two-year statute of limitations under § 548, it falls within the four-year statute of limitations under the DUFTA. 11 U.S.C. § 548(a)(1); 6 Del. C. § 1309.

the Mandle Share Purchase Agreement. Count XXVIII for civil conspiracy in relation to the Mandle Share Purchase Agreement may be predicated on any of these claims.

Therefore, the Court will deny the Motion to Dismiss as to Counts XXVII and XXVIII.

## IV.    CONCLUSION

For the reasons stated above, the Motion to Dismiss is granted with leave to amend as to Count X for avoidance of preferential transfers pursuant to 11 U.S.C. § 547. The remainder of the Motion to Dismiss is denied.

Date: Jan. 15, 2025

_____
Honorable Ashely M. Chan
United States Bankruptcy Judge